IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| IN RE AMERICAN RENAL MANAGEMENT LLC DATA BREACH LITIGATION | ) ) ) ) ) ) ) ) ) ) |  NO. 3:25-cv-00248  JUDGE RICHARDSON |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are two motions brought pursuant to Fed. R. Civ. P. 23(g)(3) seeking the appointment of interim lead class counsel[1] in this consolidated putative class action. The first motion, filed by Plaintiff Pamela Futrell-Parham (hereinafter "Plaintiff Futrell-Parham") is a "Motion in Support of Appointment of Interim Leadership and Memorandum of Law" (Doc. No. 21, "Futrell-Parham Motion"). Via the Futrell-Parham Motion, Plaintiff Futrell-Parham seeks an order designating "Danielle L. Perry and the Class Action/Data Breach Team of Mason LLP" (hereinafter, collectively, "Perry") "as Interim Class Counsel." (*Id.* at 1).[2] In the alternative, Plaintiff Futrell-Parham moves the Court to designate Perry "as Interim Co-Lead Class Counsel along with other similarly qualified counsel who have or will move this Court for a leadership position in this consolidated matter." (*Id.*).[3] The second motion, the "Majority Plaintiffs' Motion

---

[1] Throughout this Memorandum Opinion and Order, the Court will use the terms "interim lead class counsel," "interim class counsel," and "lead class counsel" interchangeably.

[2] Filed as an exhibit to the Futrell-Parham Motion is a "Mason LLP Firm Resume" (Doc. No. 21-1) detailing the relevant experience of Mason LLP and its attorneys.

[3] Although Plaintiff Futrell-Parham frames this request in terms of the appointment of Danielle L. Perry alone (and not the Class Action/Data Breach Team of Mason LLP) as interim co-lead class counsel, the

to Appoint Interim Lead Counsel," (Doc. No. 22, "Majority Plaintiffs' Motion," and collectively with the "Futrell-Parham Motion," "Motions"), is brought by Plaintiff Steevenson Jolicoeur (hereinafter, "Plaintiff Jolicoeur"), Plaintiff Jane Doe, and Plaintiff John Doe (collectively with Plaintiff Jane Doe and Plaintiff Jolicoeur, "Majority Plaintiffs").[4] The Majority Plaintiffs seek an order "designating J. Gerard Stranch, IV" (hereinafter, "Stranch") of the firm Stranch, Jennings & Garvey, PLLC "as Interim Class Counsel."[5] (*Id.* at 1).[6] Plaintiff Futrell-Parham has filed a response (Doc. No. 23, "Response") in opposition to the Majority Plaintiffs' Motion. The Majority Plaintiffs have filed a reply (Doc. No. 24, "Reply") in further support of the Majority Plaintiffs' Motion.

For the reasons described herein, the Futrell-Parham Motion (Doc. No. 21) is **DENIED,** and the Majority Plaintiffs' Motion (Doc. No. 22) is **GRANTED.** The Court will enter an accompanying order, in substantially the same form as the proposed order (Doc. No. 22-5) filed

---

Court discerns that Plaintiff Futrell-Parham is in substance requesting (in the alternative) the appointment of Danielle L. Perry *and* the Class Action/Data Breach Team of Mason LLP collectively as interim co-lead class counsel.

[4] There are five named Plaintiffs in this consolidated putative class action: Plaintiff Futrell-Parham, Plaintiff Jolicoeur, Plaintiff Jane Doe, Plaintiff John Doe, and Plaintiff Jhovanna Salazar (hereinafter, "Plaintiff Salazar," and collectively with Plaintiff Futrell-Parham, Plaintiff Jolicoeur, Plaintiff Jane Doe, and Plaintiff John Doe, "Plaintiffs"). Plaintiff Futrell-Parham is the sole named Plaintiff bringing the Futrell-Parham Motion, and the Majority Plaintiffs' Motion is brought by Plaintiff Jolicoeur, Plaintiff John Doe, and Plaintiff Jane Doe. Plaintiff Salazar takes no position on either of the Motions pending before the Court. (Doc. No. 22 at 1 n.1). Defendant, American Renal Management LLC, also takes no position on the Motions.

[5] Attached to the Majority Plaintiffs' Motion are various exhibits, including the firm resume of Stranch, Jennings & Garvey, PLLC, (Doc. No. 22-1), and a proposed order (Doc. No. 22-5) for the Court to enter should it grant the Majority Plaintiffs' Motion.

[6] Although the Majority Plaintiffs have not filed a formal response to the Futrell-Parham Motion, the Court understands the Majority Plaintiffs' Motion and the Majority Plaintiffs' Reply to effectively serve as an opposition to the Futrell-Parham Motion.

by the Majority Plaintiffs in connection with the Majority Plaintiffs' Motion, delineating the responsibilities of Stranch as interim lead class counsel.

BACKGROUND

Before addressing the merits of either motion, the Court will first provide a brief overview of the background of this action as well as the arguments underlying the Motions.

This consolidated putative class action arises out of the alleged failure of Defendant, American Renal Management LLC, to protect the private data of Plaintiffs and other members of the putative class in this consolidated action. (Doc. No. 21 at 3; Doc. No. 22 at 2). Specifically, this case arises out of the (alleged) disclosure of Plaintiffs' and others' personal data (allegedly) held on Defendant's computer network as a result of an (alleged) data breach. (Doc. No. 21 at 3; Doc. No. 22 at 2). Following this (alleged) data breach, Plaintiffs respectively filed numerous proposed class actions.

Plaintiff Salazar initially filed a class-action complaint in the District of Massachusetts on February 19, 2025 (Doc. No. 23-1 at 2), and then voluntarily dismissed that case. (*Id.*). Plaintiff Salazar then refiled her class-action complaint in this district (i.e., the Middle District of Tennessee) on March 28, 2025, and that case was assigned case number 3:25-cv-00366 ("*Salazar* Action"). (Doc. No. 21 at 4). "Plaintiff Jolicoeur initially filed [his class-action complaint] in [the] District of Massachusetts on February 21, 2025 . . . but then voluntarily dismissed" that case and refiled his class-action complaint in this district on March 20, 2025, and that case was assigned case number 3:25-cv-00322 ("*Jolicoeur* Action"). (Doc. No. 22 at 2). "Plaintiff Futrell-Parham . . . filed [her class-action complaint] in the Middle District of Tennessee on March 3, 2025" and was assigned case number 3:25-cv-00248 ("*Futrell-Parham* Action"). (Doc. No. 22 at 2). On March 4, 2025, Plaintiff John Doe and Plaintiff Jane Doe filed class-action complaints in the District of

Massachusetts, and their cases were then transferred to this District. (Doc. No. 22 at 3-4). Plaintiff John Doe's and Plaintiff Jane Doe's cases were assigned case numbers 3:25-cv-00511 ("*John Doe* Action") and 3:25-cv-00510 ("*Jane Doe* Action"), respectively, in this District.

On May 8, 2025, the Plaintiffs collectively filed a "Motion to Consolidate Actions, And Set Briefing On Appointment of Leadership" (Doc. No. 13, "Motion to Consolidate"), seeking to consolidate the *Jolicoeur* Action, the *Futrell-Parham* Action, the *John Doe* Action, the *Jane Doe* Action, and the *Salazar* Action "into the first-filed *Futrell-Parham* [A]ction." (Doc. No. 13 at 2). Via the Motion to Consolidate, Plaintiffs also requested the Court to adopt a new case name for the consolidated action: *In re American Renal Management LLC Data Breach Litigation*. (*Id.* at 2). Additionally, via the Motion to Consolidate, Plaintiffs asked the Court to:

> set the deadline for applications for appointment of lead counsel to be made within 14 days of entry of an order of consolidation; require the filing of a consolidated class action complaint ("Consolidated Complaint") within 30 days of entry of an order appointing leadership; set the deadline for Defendant's response to the Consolidated Complaint 45 days after the Consolidated Complaint is filed; set the deadline of 30 days thereafter for Plaintiffs' response; and set the deadline for Defendant's reply 15 days thereafter.

(*Id.* at 3).

In an order dated May 28, 2025 (Doc. No. 16, "Motion to Consolidate Order"), the Court granted the Motion to Consolidate, consolidating the *Jolicoeur* Action, the *Futrell-Parham* Action, the *John Doe* Action, the *Jane Doe* Action, and the *Salazar* Action "under the docket number of [the] first filed case: 3:25-cv-00248 [and] under the new title: '*In re American Renal Management LLC Data Breach Litigation.*'" (Doc. No. 16 at 3). Additionally, the Motion to Consolidate Order provided that within fourteen days of the entry of the Motion to Consolidate, "any counsel for Plaintiffs may submit an application for the appointment of interim leadership pursuant to Federal Rule of Civil Procedure 23(g)." (*Id.* at 3-4). Additionally, in the Motion to Consolidate Order, the

Court ordered that "[w]ithin thirty (30) days of an entry appointing interim leadership, Plaintiffs shall file a consolidated class action complaint" and that further:

> Defendant's response to the Consolidated Complaint shall be within 45 days of the filing of the Consolidated Complaint. Should Defendant file a Rule 12 motion, Plaintiffs' deadline to respond shall be within 30 days thereafter; and Defendant's reply in support shall be filed within 15 days thereafter.

(Doc. No. 16 at 4). Subsequently, the Futrell-Parham Motion (Doc. No. 21) and the Majority Plaintiffs' Motion (Doc. No. 22) were filed.

## THE MOTIONS

As noted above, via the Futrell-Parham Motion, Plaintiff Futrell-Parham seeks an order designating Perry as interim lead class counsel. (Doc. No. 21 at 1). In the alternative, Plaintiff Futrell-Parham moves the Court to designate Perry as "Interim Co-Lead Class Counsel along with other similarly qualified counsel who have or will move this Court for a leadership position in this consolidated matter." (*Id.*). In support of the Futrell-Parham Motion, Plaintiff Futrell-Parham argues that Perry (1) has performed substantial work investigating and litigating the claims underlying this action (*id.* at 8-9); (2) possesses "[s]ignificant [r]elevant [l]eadership [e]xperience" (*id.* at 9); and (3) has committed and will in future commit "the resources necessary" to represent the putative class. (*Id.* at 14-15). Plaintiff Futrell-Parham also argues that other factors support the designation of Perry as interim lead class counsel, including that Plaintiff Futrell-Parham's complaint was the first filed in this District. (*Id.* at 15-17).

Via the Majority Plaintiffs' Motion, the Majority Plaintiffs seek an order designating Stranch as interim lead class counsel. (Doc. No. 22 at 1). The Majority Plaintiffs argue that (1) the work Stranch has already done in this action supports Stranch's appointment as interim lead class counsel (*id.* at 6-7); (2) Stranch's experience with respect to managing class actions and other complex litigations supports Stranch's appointment as interim lead class counsel (*id.* at 7-11); (3)

Stranch's knowledge of relevant law supports Stranch's appointment as interim lead class counsel (*id.* at 11); and (4) Stranch has committed and will continue to commit resources to representing the putative class in this action. (*Id.* at 11-12). The Majority Plaintiffs also argue that private ordering (a concept discussed further below) supports Stranch's appointment as interim lead class counsel, (*id.* at 1, 5; Doc. No. 24 at 3-4), and further assert that Plaintiff Jolicoeur (one of the Majority Plaintiffs) filed the first complaint of all Plaintiffs in this action (irrespective of which district the various complaints were filed in) and (seemingly) that such filing also supports Stranch's appointment as interim lead class counsel, given that Plaintiff Jolicoeur is one of the Plaintiffs who is bringing the Majority Plaintiffs' Motion and supports Stranch's appointment as interim lead counsel. (Doc. No. 22 at 3).

## LEGAL STANDARD

Fed. R. Civ. P. 23(g) governs the appointment of interim class counsel prior to class certification, like that requested by the Motions before the Court. *See Winnet v. Caterpillar, Inc.*, No. CV 3:06-0235, 2006 WL 8438959, at *1 (M.D. Tenn. Sept. 26, 2006) (applying Rule 23(g) in considering appointment of lead class counsel prior to class certification). That rule provides specifically that the "court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3).

"The decision to appoint interim class counsel is within the Court's discretion." *Harris v. Lee Univ.*, No. 1:25-CV-107, 2025 WL 2684112, at *2 (E.D. Tenn. July 24, 2025); *Wolpert v. Branch Banking Tr. & Co.*, No. 3:19-cv-138, 2023 WL 3263487, at *4 (E.D. Tenn. Mar. 23, 2023) (same).

Fed. R. Civ. P. 23(g)(1) provides various factors for courts to consider when appointing class counsel. Although Fed. R. Civ. P. 23(g)(1) does not expressly describe its factors in terms of

the appointment of interim class counsel prior to class certification specifically—instead contemplating the appointment of "class counsel" generally—courts "routinely evaluate the factors in Rule 23(g)(1) when appointing interim class counsel prior to class certification." *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017). *See also Ross v. Jack Rabbit Servs., LLC,* No. 3:14-CV-00044, 2014 WL 2219236, at *5 (W.D. Ky. May 29, 2014) (same).

Rule 23(g)(1) provides four factors that courts must consider when appointing interim class counsel. These are:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class[,]

Fed. R. Civ. P. 23(g)(1)(A). Rule 23(g)(1) further provides that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the [(in this case, putative)] class." Fed. R. Civ. P. 23(g)(1)(B).

Where, as here, more than one applicant seeks appointment as interim lead class counsel, the court "must appoint the applicant best able to represent the interests of the class." *In re Packaged Ice Litig.*, No. 08-MD-01952, 2009 WL 1518428, at *1 (E.D. Mich. June 1, 2009) (quoting Fed. R. Civ. P. 23(g)(2)). Importantly, in assessing which of the applicants for interim class counsel is best able to represent the interests of the putative class, courts utilize the factors laid out in Rule 23(g)(1)—i.e., those identified just above by the Court. *See Powell v. Gen. Motors, LLC,* No. 25-10479, 2025 WL 3265807, at *1 (E.D. Mich. Nov. 13, 2025) (applying the Rule 23(g)(1)(A) factors when considering competing applications for interim class counsel); *Packaged Ice*, 2009 WL 118428, at *2-4 (same). Crucially, and guiding courts' inquiry into the appointment

of interim lead class counsel, "[a]ny class counsel, including interim class counsel, [once appointed] must fairly and adequately represent the interests of the class." *Troy Stacy Enterprises Inc. v. Cincinnati Ins. Co.*, 337 F.R.D. 405, 409 (S.D. Ohio 2021) (citing Fed. R. Civ. P. 23(g)(4)).[7]

Two additional points bear mentioning. First, although the Majority Plaintiffs and Plaintiff Futrell-Parham have spilt significant ink on the question of which Plaintiff in this action was actually first to file a complaint, district courts in this Circuit regularly conclude that "whether the applicant was the first to file [a complaint] is not a factor for appointment under Rule 23." *Powell*, 2025 WL 3265807, at *1. *See also In re Delphi Corp.* 248 F.R.D. 483, 506 (E.D. Mich. 2008) (noting that the court previously rejected a "first to file" argument when vacating another court's order appointing particular party's counsel lead counsel); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 365 (E.D. Mich. 2006) ("Whether someone was 'first to file' by itself has little to do with who is the best qualified to lead the case, and does not satisfy the requirements of Rule 23(g). To hold otherwise would further encourage a 'rush to the courthouse'"); *In re Goodyear Tire & Rubber Co. Erisa Litig.*, 2004 WL 6395756, at *3 (N.D. Ohio Apr. 22, 2004) (rejecting application of the first-to-file argument so as not to encourage a "race to the courthouse" and as "violat[ing]

---

[7] Notably, although the requirement that "any class counsel, including interim class counsel, must fairly and adequately represent the interests of the class" may be read to stand on its own as an independent factor for courts to consider in appointing interim class counsel, district courts do not generally consider this requirement as a distinct or separate factor on motions to appoint interim class counsel. Rather, this requirement seems instead to be a guiding principle of district courts' application of the factors provided in Rule 23(g)(1). *See Troy Stacy*, 337 F.R.D. at 409 (referring briefly to the requirement that class counsel must fairly and adequately represent the interests of the class, before then applying the factors in Rule 23(g)(1)); *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 868 (E.D. Mich. 2019) (laying out the Rule 23(g)(1)(A) factors before noting briefly that counsel must be able to "fairly and adequately represent the interests of the [putative] class." (quoting Fed. R. Civ. P. 23(g)(4)); *Powell*, 2025 WL 3265807, at *1 (noting that to assess the adequacy of interim class counsel, the court should consider the Rule 23(g)(1)(A) factors). The Court thus will not consider separately whether Perry or Stranch may "fairly and adequately represent the interests" of the putative class in this action but will instead be guided by the requirement that interim class counsel must be able to fairly and adequately represent the interests of the putative class in this case when evaluating the factors provided in Rule 23(g)(1).

the *Manual for Complex Litigation's* requirement that the Court conduct an 'independent review' of proposed Lead Counsel's relative qualifications"). Accordingly, the Court herein will not consider which of the myriad Plaintiffs in this consolidated action was first to file its complaint.[8]

Second, "a private ordering approach," wherein various plaintiffs (or their counsel)[9] agree among themselves who should serve as interim lead class counsel, is "'[b]y far the most common' method to selecting competing applicants for [interim] class counsel." *Troy Stacy*, 337 F.R.D. at 410 (quoting Manuel for Complex Litigation (Fourth) § 21.272). *Cf. Four In One Co. v. SK Foods, L.P.*, No. 2:08-CV-03017-MCE-EFB, 2009 WL 747160, at *2 (E.D. Cal. Mar. 20, 2009) ("The most common means of selecting class counsel is the so-called 'private ordering' approach, whereby involved counsel jointly come to a representational consensus and submit their recommendation in that regard to the court for approval.").

Accordingly, the Court will proceed as follows. First, the Court will consider the Motions within the framework of the four factors provided for in Rule 23(g)(1)(A). Then, the Court will consider any other matter pertinent to counsel's ability to fairly and adequately represent the

---

[8] Crucially, and as suggested by the case law reviewed above, district courts in the Sixth Circuit, when considering competing applicants for class leadership, seem to categorically decline to consider whether an applicant for class counsel leadership was the first to file their complaint under any circumstances. *But see Benitez v. Humana, Inc.*, No. CIV.A.3:08CV211-H, 2008 WL 4186857, at *1 (W.D. Ky. Sept. 9, 2008) (finding that because "[b]oth sets of counsel vying for lead counsel designation are well qualified," the court would appoint a particular counsel as lead class counsel given "his qualifications and the seniority of his action."). Thus, although Plaintiff Futrell-Parham urges the Court to consider which of the Plaintiffs was first to file a complaint in this action as a "tie-breaker" in the event that the other relevant factors governing the appointment of lead class counsel do not tilt in the direction of either Stranch or Perry, (Doc. No. 21 at 7; Doc. No. 23 at 1-2), the Court will decline to do so.

[9] The "private ordering approach" is sometimes described in terms of the consensus on class leadership reached by plaintiffs' *counsel* (rather than plaintiffs themselves). In *Troy Stacy*, however, the court simply considered which (and how many) of the plaintiffs themselves supported a particular applicant for class leadership. *See Troy Stacy*, 337 F.R.D. at 410 ("There is also relative harmony among the plaintiffs. Although the Swearingen Smiles plaintiffs do not join in the appointment requests, the rest of the plaintiffs have agreed to the structure through a private ordering approach"). In considering private ordering below, the Court will follow the lead of the court in *Troy Stacy* and simply consider which (and how many) of the Plaintiffs in this action support either Perry or Stranch for interim class leadership.

interests of this putative class under Rule 23(g)(1)(B), including any private ordering the Plaintiffs in this action have undertaken in connection with the Motions.

DISCUSSION

1. Rule 23(g)(1)(A) Factors

The Court will begin its analysis of the Motions by applying the four factors provided in Rule 23(g)(1)(A) and by considering—in line with the discussion provided in the footnote above— whether Perry and Stranch would be able to fairly and adequately represent the interests of the putative class in this case in considering these factors below.

    *a. Work Performed Identifying or Investigating Potential Claims in this Action*

Turning to Rule 23(g)(1)(A)(i), the Court must consider "the work counsel has done in identifying or investigating potential claims in the action." Here, both Perry and Stranch have conducted extensive work in identifying and investigating the claims underlying this action.

Plaintiff Futrell-Parham conveys that Perry has (1) "[i]nvestigat[ed] the facts surrounding the Data Breach;" (2) "[i]nvestigat[ed] the Defendant's corporate and administrative business activity locations for the most appropriate jurisdiction and venue;" (3) "[r]eview[ed] other filed cases and bases for jurisdictional choice;" (4) "[i]nterview[ed] consumers injured by the Data Breach, including detailed intake with and vetting of named plaintiff;" (5) "[r]esearch[ed] legal claims;" and (6) "[d]raft[ed] initial pleadings." (Doc. No. 21 at 8-9). Plaintiff Futrell-Parham also contends that Perry "worked with defense counsel to extend the responsive pleading deadline (Doc. 10) and to prepare an initial joint case management order (Doc. 14), attended the initial case management conference (Min. Entry, May 14, 2025), and worked with all other [P]laintiffs' counsel to draft the unopposed motion to consolidate the related cases (Doc. 13)." (Doc. No. 23 at 2).

For their part, the Majority Plaintiffs assert:

First, [] Stranch independently investigated the facts and circumstances surrounding the case, including, inter alia: the alleged failures of Defendants to safeguard and maintain Plaintiffs and Putative Class Members' sensitive private information, Defendant's public statements regarding the events surrounding these failures, other media commentary, and affected individual's experiences concerning the data breach. Second, [] Stranch devoted extensive time to researching the relevant law, and applying their experience, to prepare detailed Complaints. Third, [] Stranch spent significant time speaking with and interviewing class members who have contacted them, expressed interest in the case, and sought more information about the case and the underlying issues. Fourth, [] Stranch coordinated with counsel for Majority Plaintiffs to file this Motion now before the Court and to submit an organized leadership structure for the orderly prosecution of this case. [] Stranch will continue to expend all the time and resources necessary to advocate for Plaintiffs and the putative Class.

(Doc No. 22 at 7).

The Court finds that both Perry and Stranch have done significant work in identifying and investigating potential claims in the action. So, despite Plaintiff Futrell-Parham's arguments in her Response that this factor "heavily" favors Perry's appointment as interim class counsel (Doc. No. 23 at 2)), the Court does not discern that this factor favors appointing Perry over Stranch or Stranch over Perry as interim lead class counsel.

### b. Counsel's Experience in Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted in the Action

The second factor is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). Here, as with the first factor, the Court discerns that this factor does not cut in favor of appointing either Perry over Stranch or Stranch over Perry as interim lead class counsel.

Plaintiff Futrell-Parham points to the substantial experience that Perry has in managing class actions like the instant consolidated putative class action. (Doc. No. 21 at 9-14).[10] Likewise,

---

[10] Indeed, Danielle L. Perry as an individual and as a member of Mason LLP:

the Majority Plaintiffs assert that Stranch has "deep experience in data breach class actions" and is "more than qualified to represent the [putative] Class here." (Doc. No. 22 at 11).[11] The Court's review of the briefing (and exhibits) on the Motions confirms the accuracy of the contentions of both Plaintiff Futrell-Parham and the Majority Plaintiffs; the Court discerns that both Stranch and Perry have substantial experience in handling class actions, other complex litigation, and the types

---

>has been named class counsel or appointed to leadership positions in numerous recent data breach class actions, including, *inter alia*: *Dunn v. Complete Payroll Sols.*, LLC, No. 1:25-cv-30045 (D. Mass.) (appointed Co-Lead Counsel on June 3, 2025); *Doe v. Conceptions Reprod. Assocs.*, No. 1:25-cv-00009 (D. Colo.) (appointed Co-Lead Class Counsel on May 6, 2025); *Pannozzi v. Deloitte Consulting*, No. 1:24-cv-00524-MRD-AEM (D.R.I.) (appointed Co-Lead Counsel on Mar. 19, 2025); *Alexander v. Summit Pathology Laboratories, Inc.*, No. 1:24-cv-02939 (D. Colo.) (appointed Co-Lead Class Counsel on Dec. 11, 2024); *In re MedStar Health Data Sec. Litig.*, No. 1:24-cv-01335 (D. Md.) (appointed Co-Lead Class Counsel on Nov. 7, 2024); *Andersen v. Oak View Grp., LLC*, No. 2:24-cv-00719 (C.D. Cal.) (appointed Co-Lead Class Counsel on May 15, 2024); *Cahill v. Mem'l Heart Inst., LLC*, No. 1:23- cv-00168 (E.D. Tenn.) (appointed Co-Lead Class Counsel on Feb. 22, 2024); *Rasmussen v. Uintah Basin Healthcare*, No. 2:23-cv-00322 (D. Utah) (appointed Co-Lead Class Counsel on June 4, 2023).

(Doc. No. 21 at 10-11).

[11] For his part, Stranch has taken part in "hundreds of privacy class actions" including:

>*Martinez et al. v. Presbyterian Healthcare Services*, No. D-202-CV-2020-01578 (N.M. Dist. Ct.) (class of 1,047,428 individuals); *Owens v. U.S. Radiology Specialists Inc. et al.*, No. 22 CVS 17797 (N.C. Super. Ct.); *In re Goodman Campbell Brain & Spine Data Incident Litig.*, No. 49D01-2207-PL-024807 (Ind. Super. Ct.); *Monegato v. Fertility Ctrs. of Illinois, PLLC*, No. 2022 CH 00810 (Cook Cty. Cir. Ct.); *Berthold v. Norton Healthcare, Inc.*, No. 23-CI-003349 (Jeff. Cty., Ky. Cir. Ct.) (appointed co-lead interim class counsel in consolidated data breach class action impacting at least 2.5 million patients and employees); *Lurry v. Pharmerica Corp.*, No 3:23- cv-00297-RGJ (W.D. Ky.) (appointed interim lead class counsel in consolidated data breach class action); *Goodlett v. Brown-Forman*, No. 20-CI-005631 (Jefferson Cty. Ky. Cir. Ct.); *Reese v. Teen Challenge Training Ctr., Inc.*, No. 210400093 (Phil. Cty. Pa. Ct. Comm. Pl.); *Black v. Smith Transport, Inc.*, No. 2022 GM 3110 (Blair Cty. Pa. Ct. Comm. Pl.) (final approval pending); *K.B. E. Tenn. Children's Hosp. Ass'n*, No. C2LA0081 (Tenn. Cir. Ct.); *Henck v. Squirrel Hill Health 11 Ctr.*, No. GD-21-014637 (Pa. Ct. Comm. Pls.); *Edwards v. Concord Music Grp.*, No. 24C2675 (Tenn. Cir. Ct.); *Bauer v. BJC Health Sys.*, No. 2022-CC-09492 (Mo. Cir. Ct.); *Castaneda v. Ardagh Glass*, Inc., No. 1:23-cv-02214 (S.D. Ind.); *O'Neal v. Quaker Window Prods.*, No. 24OS-CC-00002 (Mo. Cir. Ct.).

(Doc. No. 22 at 10-11).

of claims asserted in this action. To put it another way, the Court finds that this factor does not weigh in favor of appointing either Perry over Stranch or Stranch over Perry as interim lead class counsel.

### c. Counsel's Knowledge of Applicable Law

The next factor is "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(iii). Plaintiff Futrell-Parham (seems) to point to the substantial experience Perry has in managing class actions to highlight Perry's knowledge of applicable law. (Doc. No. 21 at 9-14). The Majority Plaintiffs argue more directly that Stranch is:

> knowledgeable and familiar with the legal claims at issue. [] Stranch's firm regularly litigates cases involving complex litigation. Moreover, as noted above, [] Stranch's firm is the only applicant with lawyers based in this district and have significant experience litigating data breach cases in Tennessee. Further, as discussed above, [] Stranch extensively researched the claims at issue before filing. Given his vast experience, [] Stranch is also equally knowledgeable regarding the discovery and expert needs for the instant case and are prepared to defend against and refute the multiple affirmative defenses expected to be raised by Defendant. Perhaps most importantly, [] Stranch is a seasoned class action litigator who is well versed in the nuances of the class action vehicle and Rule 23.

(Doc. No. 22 at 11). The Court's review of the briefing (and exhibits) on the Motions confirms that both Perry and Stranch have substantial knowledge of the applicable law in this action. And thus, as with the other two Rule 23(g)(1)(A) factors that the Court has analyzed above, the Court finds that this factor does not cut in favor of appointing either Perry over Stranch or Stranch over Perry as interim lead class counsel.

### d. Resources Counsel Will Commit to Representing the Class

The last Rule 23(g)(1)(A) factor is "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv) With respect to this factor, Plaintiff Futrell-Parham contends that Perry:

can and will draw upon the skills and talents of the experienced attorneys in [Mason LLP's] own office, as well as the experienced and cohesive group of attorneys who have filed related (now consolidated) cases. [Perry] understands the time, energy, and skill necessary to lead this litigation, the need to work collaboratively with other firms in the related actions, and Mason LLP has committed the resources required to ensure the effective and efficient leadership for the representation of Class Members. In fact, [Perry has] already demonstrated their commitment to this litigation by devoting substantial resources to prosecuting this action. And, as the Mason LLP firm resume and counsels' experience indicate, [Perry has] the resources and experience to see this litigation through to its conclusion, including trial.

(Doc. No. 21 at 14-15).

The Majority Plaintiffs assert that Stranch:

has demonstrated his will and ability to dedicate the necessary resources to ensure a substantial and sustainable case on behalf of the putative Class members. As described above, each firm has thoroughly investigated, developed, and gathered evidence in support of Plaintiffs' claims against Defendants, and have already invested and committed significant resources to prosecute this case. [] Stranch is hard working, organized, and effective. [] Stranch has taken hundreds of cases from inception to conclusion, advancing all litigation costs, and will do so here. Moving forward, [] Stranch will continue to staff the Related Actions with knowledgeable and experienced attorneys, supported by accomplished support staff, as they prepare pleadings, draft memoranda, conduct discovery, work with experts, and assist in trial preparation. [] Stranch will continue their commitment of resources and efforts to the Related Actions, just as they have in other successful litigation. Moreover, [] Stranch's collective decades of accomplished litigation in cases like this evidence a proven history of dedicating all resources necessary to effectively litigate and resolve this matter. In the aggregate, [] Stranch will put forth substantial resources to vigorously advocate for the interests of the putative Class, just as he has done in prior cases. Finally, the firms will efficiently staff the litigation in a manner that will avoid duplication of effort.

(Doc. No. 22 at 11-12).

All told, the Court finds that both Perry and Stranch each have more than sufficient resources to dedicate to the putative class in this case and that therefore, as with each of the other Rule 23(g)(1)(A) factors, this factor does not cut in favor of appointing either Perry over Stranch or Stranch over Perry as interim lead class counsel.

So, the Court has concluded that none of the four Rule 23(g)(1)(A) factors favors the appointment of either Perry over Stranch or Stranch over Perry as interim lead class counsel. Additionally, the Court notes that its application of the four Rule 23(g)(1)(A) factors leads the Court to conclude that both Perry and Stranch would certainly be able to fairly and adequately represent the interests of the putative class in this case. *Troy Stacy*, 337 F.R.D. at 409 ("Any class counsel, including interim class counsel, must fairly and adequately represent the interests of the class." (citing Fed. R. Civ. P. 23(g)(4))). With this in mind, the Court will next apply Rule 23(g)(1)(B) in its consideration of the Motions.

2. Rule 23(g)(1)(B)

Rule 23(g)(1)(B) provides that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." As particularly relevant here and as noted above, "a private ordering approach," wherein various plaintiffs (or their counsel) agree among themselves who should serve as interim lead class counsel, is "'[b]y far the most common' method to selecting competing applicants for [interim] class counsel." *Troy Stacy*, 337 F.R.D. at 410 (quoting Manuel for Complex Litigation (Fourth) § 21.272). *Cf. Four In One Co.*, 2009 WL 747160, at *2 ("The most common means of selecting class counsel is the so-called 'private ordering' approach, whereby involved counsel jointly come to a representational consensus and submit their recommendation in that regard to the court for approval.").

Here, the private ordering of the Plaintiffs favors the appointment of Stranch as interim lead class counsel. As noted in a footnote above, there are a total of five named Plaintiffs in this consolidated putative class action: Plaintiff Futrell-Parham, Plaintiff Jolicoeur, Plaintiff Jane Doe, Plaintiff John Doe, and Plaintiff Salazar. Of these five Plaintiffs, three of the Plaintiffs—Plaintiff Jolicoeur, Plaintiff Jane Doe, and Plaintiff John Doe—bring the Majority Plaintiffs' Motion and

support the appointment of Stranch as interim lead class counsel in this action. Only one Plaintiff, Plaintiff Futrell-Parham, brings the Futrell-Parham Motion and supports the appointment of Perry as interim lead class counsel. Plaintiff Salazar, the sole other named plaintiff in this action, has not taken a position on the Motions or class leadership. (Doc. No. 22 at 1 n.1). Indeed, as the Majority Plaintiffs argue, their request for the appointment of Stranch as "interim lead counsel . . . is the product of private ordering that resulted in three of four plaintiffs"—Plaintiff Jolicoeur, Plaintiff Jane Doe, and Plaintiff John Doe, but not Plaintiff Futrell-Parham—"agreeing on the appropriate counsel, with a fifth"—Plaintiff Salazar—"abstaining [on the question of leadership]." (Doc. No. 24 at 3-4).

The Court finds that the private ordering of the Plaintiffs is persuasive in deciding the Motions, particularly given that none of the Rule 23(g)(1)(A) factors favor the appointment of either Perry over Stranch or Stranch over Perry as interim lead class counsel, and given that both Perry and Stranch are able to fairly and adequately represent the interests of the putative class in this case. Accordingly, the Court will follow the private ordering of the parties, and will, therefore, grant the Majority Plaintiffs' Motion (Doc. No. 22), deny Plaintiff Futrell-Parham's Motion (Doc. No 21), and appoint Stranch as interim lead class counsel.[12]

---

[12] Plaintiff Futrell-Parham also argues that because Perry has "previously worked with all of the other attorneys and firms that are representing Plaintiffs in this matter" (Doc. No. 21 at 16), such past work also supports the appointment of Perry as interim lead class counsel. The Court does not disagree with this assertion but notes that Perry's past work with attorneys representing the named Plaintiffs in this matter does not outweigh the fact that three of the five named Plaintiffs in this action support the appointment of Stranch as interim lead class counsel.

CONCLUSION[13]

Accordingly, and for the reasons stated herein, the Futrell-Parham Motion (Doc. No. 21) is **DENIED,** and the Majority Plaintiffs' Motion (Doc. No. 22) is **GRANTED.** The Court will enter an order, in substantially the same form as the proposed order (Doc. No. 22-5) filed by the Majority Plaintiffs in connection with the Majority Plaintiffs' Motion, delineating the responsibilities of Stranch as interim lead class counsel.

In line with the Motion to Consolidate Order (Doc. No. 16), within thirty (30) days of the entry of this Memorandum Opinion and Order, Plaintiffs shall file a consolidated class action complaint ("Consolidated Complaint"). Defendant's response to the Consolidated Complaint shall be within 45 days of the filing of the Consolidated Complaint. Should Defendant file a Rule 12 motion in response to the Consolidated Complaint, Plaintiffs' deadline to respond shall be within 30 days thereafter; and Defendant's reply in support shall be filed within 15 days thereafter.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[13] Plaintiff Futrell-Parham also requests as an alternative to appointing either Perry or Stranch as sole interim lead class counsel, that the Court designate Perry and Stranch as interim co-lead class counsel. (Doc. No. 23 at 3-4). Plaintiff Futrell-Parham has not indicated why a co-leadership structure is necessary in this particular case, and in any event, the Majority Plaintiffs oppose such an arrangement. (Doc. No. 24 at 4). Accordingly, the Court will not grant Plaintiff Futrell-Parham's request that Perry be appointed as interim co-lead class counsel along with Stranch.